Christian Contreras, Esq. (SBN 330269)
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiff,
Tommy R. Mercurio

Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW,**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112; Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Attorneys for Plaintiffs,
Estate of Christopher Mercurio, et al.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF CHRISTOPHER MERCURIO, by and through Successor in Interest, Hayley Bernal; HAYLEY BERNAL, individually; TOMMY R. MERCURIO, individually,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LOS ANGELES COUNTY SHERIFF's DEPARTMENT, a public entity; COUNTY OF LOS ANGELES, a public entity; and LORENA GONZALEZ, an individual,<br><br>　　　　　Defendants. | **CASE NO.: 2:24-cv-11089**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Excessive Force in Violation of the Fourth Amendment (42 USC § 1983);<br>2. Fourteenth Amendment Violation – Interference with Familial Relationship (42 USC § 1983);<br>3. Municipal Liability – *Monell* (42 USC § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    This is a civil rights action against Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT, COUNTY OF LOS ANGELES, and LORENA GONZALEZ, stemming from an excessive use of force shooting wherein Defendant GONZALEZ fatally shot CHRISTOPHER MERCURIO twice on January 11, 2023.

2.    This case stems from a minor call for service on January 11, 2023, at approximately 10:58 P.M. Defendant GONZALEZ, a deputy, responded to a shopping center located in Santa Clarita regarding a male who was allegedly trespassing. The call indicated the male was an alleged "transient" sleeping in front of the business. The male was identified as 50-year-old MERCURIO. Upon arrival, Defendant GONZALEZ approached MERCURIO and told him he couldn't sleep there and escalated the situation. Defendant GONZALEZ failed to de-escalate the situation and instead exacerbated it when she pushed MERCURIO and failed to wait for back-up. In response, MERCURIO did not leave and made some statements which did not make sense. Thereafter, Defendant GONZALEZ distanced herself, drew her gun, and pointed it at MERCURIO.

3.    MERCURIO was completely unarmed and had no access to any weapons. However, MERCURIO walked towards Defendant GONZALEZ. As MERCURIO was merely walking towards, Defendant GONZALEZ shot CHRISTOPHER MERCURIO one time and then a second time killing MERCURIO. In shooting and killing MERCURIO, Defendant GONZALEZ used unreasonable and excessive force.

4.    CHRISTOPHER MERCURIO was gentle soul. MERCURIO was also a beloved, son, brother, and father. Although MERCURIO had personal struggles, including mental health struggles, MERCURIO was deeply loved.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

5.  Plaintiffs HAYLEY BERNAL, daughter of MERCURIO, and TOMMY R. MERCURIO, father of CHRISTOPHER MERCURIO, now bring this suit against Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT, COUNTY OF LOS ANGELES, and LORENA GONZALEZ for damages incurred as a result of the killing of their loved one.

6.  Accordingly, this Complaint seeks judicial redress and monetary damages for such constitutional violations.

## JURISDICTION AND VENUE

7.  This case is properly heard in United States District Court under federal question jurisdiction, pursuant 28 U.S.C. § 1331, as it is a civil suit which presents questions arising exclusively under federal law.

8.  Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiff's claims occurred within this district.

## PARTIES

9.  Plaintiff ESTATE OF CHRISTOPHER MERCURIO is represented through its successor in interest HAYLEY BERNAL pursuant to Code of Civil Procedure § 377.20.

10.  Plaintiff HAYLEY BERNAL was the natural daughter of CHRISTOPHER MERCURIO, and at all times relevant hereto were residents of Los Angeles County, California. Plaintiff HAYLEY BERNAL bring these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq*. and 377.60 *et seq*., which provide for survival and wrongful death actions. Plaintiff HAYLEY BERNAL also bring these claims individually and on behalf of decedent CHRISTOPHER MERCURIO on the basis of 42 U.S.C. § 1983 and § 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff HAYLEY BERNAL also bring these claims as a Private Attorney General, to vindicate not only their rights, but others' civil rights of great importance.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

11.     Plaintiff TOMMY R. MERCURIO is and was, at all times relevant hereto, a resident of the State of Missouri. Plaintiff TOMMY R. MERCURIO—the father of CHRISTOPHER MERCURIO—brings his claims individually on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff TOMMY R. MERCURIO also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

12.     Defendant LOS ANGELES COUNTY SHERIFF's DEPARTMENT is a public entity with the capacity to sue and be sued.[1] At all times relevant to the facts alleged herein, Defendant LOS ANGELES COUNTY SHERIFF's DEPARTMENT was responsible for law enforcement services in the County of Los Angeles.

13.     Defendant COUNTY OF LOS ANGELES is a public entity with the capacity to sue and be sued. At all times relevant to the facts alleged herein, Defendant COUNTY OF LOS ANGELES was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California.

14.     Defendant LORENA GONZALEZ was an employee of LASD at all relevant times. At all relevant times, Defendant LORENA GONZALEZ was acting under color of law.

15.     Each of the defendants caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiff by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful

---

[1] The Ninth Circuit has held that California law permits § 1983 claims against municipal police departments. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.).

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

conduct; by failing and refusing to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

16.    Plaintiff is informed and believes and thereon alleges that each of the Defendants was, at all material times, an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of CHRISTOPHER MERCURIO's constitutional rights and other harm.

17.    Plaintiff is informed and believes, and thereupon alleges, that at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

18.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

19.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## FACTUAL ALLEGATIONS

20.    On January 11, 2023, at approximately 10:58 P.M. Defendant GONZALEZ, a deputy, responded to a shopping center located in the 24200 block of Valencia Boulevard, in Santa Clarita, regarding a call of a male who was trespassing. Additional information indicated the male was sleeping in front of the business and refused to leave. The male was later identified as 50-year-old CHRISTOPHER

MERCURIO. MERCURIO was attempting to sleep in front of the business. The shopping center was closed, and he was not obstructing the front entrance. MERCURIO was positioned next to a trashcan, away from the front entrance.

21.    Upon information and belief, the 911 call came in from one of the mall's security guards who informed officers that there was a transient (CHRISTOPHER MERCURIO) who did not want to leave the property.

22.    Thereafter, Defendant GONZALEZ responded to the scene. Upon arriving, LORENA GONZALEZ shone her vehicle's lights on MERCURIO. She exited her car and began walking towards MERCURIO. At that moment, MERCURIO calmly stood up and started walking towards the officer in a composed manner and they exchanged a series of words.

23.    As soon as Defendant GONZALEZ contacted MERCURIO any reasonable law enforcement officer should have recognized that MERCURIO had mental health issued. In fact, MERCURIO stated things which did not make sense including referencing the countries of China and Iran. Instead of deploying a team that could de-escalate the situation, or calling for the Mental Evaluation Team, they sent one single officer to handle the situation that more than one individual could not handle on his own.

24.    Instead of using proper techniques to deescalate the situation, Defendant GONZALEZ exacerbated the mental health condition of MERCURIO and created a crisis that put both parties in danger.

25.    Indeed, Defendant GONZALEZ had several options available to avoid the crisis that arose from her failure to de-escalate the situation but instead she chose to confront MERCURIO by herself, who was clearly larger than her, and who was clearly undergoing a meatal health crisis. Throughout the encounter, there were several instances where Defendant GONZALEZ could have walked away and waited for backup, but she chose not to do so.

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

26.    Thereafter, Defendant GONZALEZ remained standing in front of him and, at some point, placed her hand between them and pushed him. In response, MERCURIO appeared upset. Subsequently, Defendant GONZALEZ distanced herself, drew her gun, and pointed it at MERCURIO.

27.    Defendant GONZALEZ had several alternative methods to interact with MERCURIO but failed to implement any of them and instead, immediately resorted to drawing her weapon which was a further escalation.

28.    Worst yet, MERCURIO did not have any weapons on him, and he did not threaten Defendant GONZALEZ r with any weapons either.

29.    Thereafter, Defendant GONZALEZ walked backwards as MERCURIO merely walked towards Defendant GONZALEZ. Defendant GONZALEZ subsequently shot MERCURIO twice for failing to back away. MERCURIO subsequently died from the wound shots.

30.    At the time Defendant GONZALEZ shot MERCURIO, MERCURIO was not holding any weapons or threatening to use any weapons. There was no possible way to MERCURIO to cause any harm to Defendant GONZALEZ. Clearly, MERCURIO was not an imminent threat of death or serious bodily injury. Therefore, the use of force by Defendant LORENA GONZALEZ was excessive and unreasonable in violation of MERCURIO's constitutional rights.

## FIRST CLAIM FOR RELIEF

### For Excessive Force in Violation of The Fourth Amendment

### (42 USC § 1983)

### (By Plaintiff ESTATE OF CHRISTOPHER MERCURIO against Defendant LORENA GONZALEZ)

31.    Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

32.    The Fourth Amendment to the Constitution provides in part, "[t]he right of the people to be secure in their persons . . . against unreasonable searches and

seizures, shall not be violated . . ." U.S. Const. amend. IV. Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. *See Graham v. Connor,* 490 U.S. 386, 397 (1989).

33.     At all relevant times, Defendant GONZALEZ was acting under color of law.

34.     On January 11, 2023, Defendant GONZALEZ used deadly force on MERCURIO. When Defendant GONZALEZ used deadly force on MERCURIO, MERCURIO was not an imminent threat of death or serious bodily injury, MERCURIO did not have any weapons on him nor was the crime at issue a serious crime. Clearly, Defendant GONZALEZ's use of deadly force was not objectively reasonable under the circumstances.

35.     Furthermore, when assessing the totality of the circumstances, there was no need for the use of deadly force.

36.     Therefore, Defendant GONZALEZ violated MERCURIO's Fourth Amendment rights when she used deadly force on MERCURIO.

37.     Accordingly, under the totality of the circumstances, Defendant GONZALEZ's use of deadly force on MERCURIO was not objectively reasonable and was in violation of MERCURIO's Fourth Amendment rights.

38.     As a direct and proximate result of Defendant GONZALEZ's acts and/or omissions as set forth above, MERCURIO sustained injuries and damages.

39.     As a direct and proximate result of Defendant GONZALEZ's conduct, the civil rights of MERCURIO, as protected by the Fourth Amendment of the United States Constitution were violated. Further, up until the moments his death, MERCURIO, experienced physical pain, severe emotional distress, and mental anguish.

40.     Defendant GONZALEZ subjected MERCURIO to her wrongful conduct, depriving MERCURIO of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of MERCURIO and others would be violated by her acts and/or omissions. The conduct of Defendant

1  entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983

2  and as provided by law. Plaintiff does not seek punitive damages against the public

3  entity Defendants.

4      41.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

5  U.S.C. § 1988, and other applicable United States and California codes and laws.

6  ## SECOND CLAIM FOR RELIEF

7  **For Interference with Familial Relationship in Violation of the Fourteenth**

8  **Amendment**

9  **(42 U.S.C. § 1983)**

10  **(By Plaintiffs HAYLEY BERNAL & TOMMY R. MERCURIO, individually,**

11  **against Defendant LORENA GONZALEZ)**

12     42.   Plaintiff realleges and incorporates by reference each of the forgoing

13  paragraphs of this Complaint with the same force and effect as if fully set forth herein.

14     43.   Parents and children possess a constitutionally protected liberty interest in

15  companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411,

16  1418 (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199

17  F.3d 1037 (9th Cir. 1999) (en banc). This liberty interest is rooted in the Fourteenth

18  Amendment, which states in relevant part that "[n]o State shall . . . deprive any person

19  of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

20     44.   At all relevant times, Defendant GONZALEZ was acting under color of

21  law.

22     45.   As alleged above, the acts and omissions of Defendant GONZALEZ was

23  conduct which shocks the conscience done with a purpose to harm or in deliberate

24  indifference to MERCURIO's life, protection, and constitutional rights.

25     46.   The acts and/or omissions of Defendant GONZALEZ, including her

26  unconstitutional use of deadly force, violated Plaintiffs HAYLEY BERNAL and

27  TOMMY R. MERCURIO's liberty interests in the familial relationship and violated

28  Plaintiff TOMMY R. MERCURIO's substantive due process rights as defined by the

Fourteenth Amendment of the Constitution.

47. Indeed, the acts and omissions of Defendant GONZALEZ, deprived Plaintiff TOMMY R. MERCURIO of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff TOMMY R. MERCURIO of his rights to a familial relationship with MERCURIO without due process of law by their deliberate indifference in causing substantial harm to MERCURIO through Defendants' acts and omissions.

48. In engaging in conduct that shocks the conscience, Defendant GONZALEZ, acted with a purpose to harm, unrelated to any legitimate law enforcement objective when she shot MERCURIO. At the very least, Defendant GONZALEZ acted with deliberate indifference to the rights, safety, and wellbeing of MERCURIO when she shot MERCURIO.

49. Accordingly, the conduct of Defendant GONZALEZ shocks the conscience and has unconstitutionally interfered with the familial association between Plaintiff and MERCURIO in violation of the Fourteenth Amendment.

50. As a direct and proximate result of Defendant GONZALEZ's acts and/or omissions as set forth above, Plaintiff sustained injuries and damages and are entitled to damages under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

51. Furthermore, Defendant GONZALEZ subjected MERCURIO to her wrongful conduct, depriving him of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of MERCURIO and others would be violated by their acts and/or omissions. The conduct of Defendant GONZALEZ entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against the public entity Defendants.

52. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States laws.

1

### THIRD CLAIM FOR RELIEF

**For Municipal Liability**

**(42 U.S.C. § 1983)**

**(By Plaintiff ESTATE OF CHRISTOPHER MERCURIO against Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES)**

53.     Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

54.     In *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id.* at 690. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondent superior, liability may attach where the municipality itself causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691.

55.     Furthermore, "the inadequacy of police training may serve as the basis for § 1983 liability inly when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

56.     As set forth in the foregoing claims for relief, MERCURIO's constitutional rights were violated. Indeed, Defendant GONZALEZ, committed clear and well-established violations of MERCURIO's constitutional rights, under color of law, and while acting within the course and scope of her employment as a sheriff deputy with Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES.

57.     The complete and utter failure of the Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES to redress

systemic unconstitutional customs and practices and implement procedural safeguards, in all of the ways described in the paragraph to follow, is tantamount to an unconstitutional policy of inaction on account of the facts that: 1) certain unlawful customs or practices have been permitted to grow so widespread commonplace in their usage as to constitute standard operating procedures within the LOS ANGELES COUNTY SHERIFF's DEPARTMENT; and 2) the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights set forth herein that the policymakers of the Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES, can be reasonably regarded as deliberately indifferent to this need.

58.     On and for some time prior to January 11, 2023, (and continuing to the present date), Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES, acting with reckless and deliberate indifference to the rights and liberties of the public in general, and of CHRISTOPHER MERCURIO and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of[2]:

A. Permitting deputies such as Defendant GONZALEZ to respond to mental health calls;

B. Permitting deputies such as Defendant GONZALEZ to respond to mental health calls without involving the Mental Evaluation Team;

---

[2] Several of the unconstitutional policies, customs and practices are based upon constitutional violations caused by the County and LASD themselves independent of constitutional violations by individual deputies. Even if the individual deputies are exonerated, Plaintiffs still have cognizable *Monell* claims as to the County and LASD. *See Fairley v. Luman*, (9th Cir. 2002) 281 F.3d 913; *Quintanilla v. City of Downey*, (9th Cir. 1996) 84 F.3d 353.

PLAINTIFF'S COMPLAINT FOR DAMAGES

C. Permitting deputies such as Defendant GONZALEZ to respond to a mental health crisis without engaging in proper de-escalation techniques and calling the Mental Evaluation Team.

D. Permitting deputies such as Defendant GONZALEZ to shoot members of the public such as MERCURIO despite being unarmed;

E. Permitting deputies such as Defendant GONZALEZ to use lethal force even after deputies have already used lethal force and a perceived threat has been neutralized;

F. Failing to correct repeated excesses of force, and to adequately train, instill, and retrain personnel on the appropriate standards thereof, de-escalation techniques, familiarity with "less-than-lethal" alternatives to deadly force, and confidence in their reliance thereon;

G. Creating, approving, ratifying, and implementing erroneous and misleading Corrective Action Plans ("CAP") after resolving civil litigation cases involving constitutional violations. The CAP is a written document circulated within the County through the County claims board after every case is resolved which policy-makers, officials, and other high-ranking County employees rely on to attempt to correct constitutional violations caused by County policies, customs or practices. However, the CAP contains misleading and deceptive information concerning each individual case. Thereafter, claims board members and the Board of Supervisors "rubber stamp" and approve settlements based upon the representations in the CAP. The consequence is that reform and corrections to unconstitutional County policies, customs or practices never occur;

H. Failing to timely create and circulate CAPs;

I. Failing to timely approve settlements;

J. Employing and retaining personnel, including the individual defendants, who are known or reasonably could have been discovered to have high

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

propensities for abusing their authority, omitting crucial duties, mistreating civilians, resorting to excessive force, and failing to follow established agency policies respecting interactions with civilians and their civil rights;

K. Maintaining vastly inadequate procedures and follow through, if any, for the reporting, investigating, supervising, disciplining, and correcting of intentional misconduct and/or gross negligence by personnel, including the individual defendants;

L. Consistently ratifying the intentional misconduct and/or gross negligence of personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

M. Encouraging, accommodating, or facilitating a "code of silence" among personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

N. Actively facilitating the transfer of problem personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct, thereby allowing them to evade discipline and, likewise, shielding the departments from accountability;

O. Allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of supervision or authority within the department; and

P. The many other abuses of power and/or breaches of duty not specifically identified herein.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

59.     The structural and administrative features set forth above-regardless of whether expressly adopted, informally entrenched as *de facto* customs or practices due to their widespread and longstanding character, or having materialized in the absence of foreseeably necessary safeguards-all constitute standard operating procedures within Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES.

60.     Clearly, Defendant LORENA GONZALEZ acted pursuant to the foregoing customs and practices, and such policies, custom and practices were the moving force behind CHRISTOPHER MERCURIO's constitutional violations.

61.     As a direct consequence of these realities, the public has endured pervasive misuses of force and/or police killings, lost considerable trust and grown increasingly fearful of local law enforcement, and sustained the exorbitant costs of individualized trauma, family and community destruction, and the perpetual hemorrhaging of public resources in remediation rather than prevention of these problems. In the aggregate, these consequences undermine public safety, well-being, liberty, and equity so severely that all COUNTY OF LOS ANGELES residents are worse off.

62.     The perpetual torrent of civilian complaints, litigation, and scrutiny by local, state, and national media, academia, and government officials, has rendered the dire state of affairs within the LOS ANGELES COUNTY SHERIFF's DEPARTMENT unignorable and undeniable. At some point well before the brutalization of CHRISTOPHER MERCURIO, Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES, and each of the individual supervisory officials thereof, whether named or unnamed, achieved actual or constructive knowledge of the forgoing policies, customs, and practices. Nevertheless, Defendants LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS ANGELES, by and through its final policymakers, has persisted in tolerating, condoning, or ratifying the above-referenced policies, customs,

1  and practices with deliberate indifference to their unconstitutionality and foreseeable
2  consequences, not least of which resemble those suffered by CHRISTOPHER
3  MERCURIO and other individuals similarly situated.

4  63. Furthermore, Defendants COUNTY and LASD are also liable under a
5  failure to train theory. This failure of Defendants COUNTY and LASD to provide
6  adequate training caused the variously alleged deprivations of MERCURIO's rights by
7  the individual defendants; that is, the COUNTY and LASD's failure to train is so
8  closely related to the deprivation of MERCURIO's rights as to be the moving force
9  that caused his ultimate injuries. Clearly, Defendants COUNTY and LASD, were
10 deliberately indifferent to the obvious consequences of its failure to train its deputies
11 and employees adequately.

12 64. Prior to CHRISTOPHER MERCURIO's death, high-level COUNTY
13 supervisors, knew or should have known of a history of years of notice of ongoing
14 failure to properly deal with individuals experiencing a mental health crisis or living
15 with a mental health illness. Yet, despite being aware of its failure to appropriately
16 interact with such individuals, the COUNTY continued to neglect taking corrective
17 measures to prevent unnecessary police shootings involving them. The number of
18 lawsuits against the COUNTY and throughout the state and the evidence available from
19 those actions is troubling and demonstrative of Defendants' years of deliberate
20 indifference to individuals experiencing a mental health crisis or living with a mental
21 health illness.

22 65. As a preamble, between 2021 and 2023, the LASD and COUNTY were
23 aware of numerous cases highlighting constitutional violations involving deputies' use
24 of excessive force when interacting with individuals experiencing a mental health crisis
25 or living with a mental health illness.

26 66. Indeed, in terms of the customs and practices being widespread and
27 longstanding, LASD and COUNTY deputies have shot individuals such as
28 MERCURIO countless times in violation of civil rights. In fact, such constitutional

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

violations occur with significant duration, frequency and consistency that shooting individuals such as MERCURIO who are in a mental health crisis has become a traditional method of carrying out policy. In fact, the following incidents exemplify how widespread and longstanding the aforementioned policies and practices are:

A. **The shooting and killing of Vazquez, Marco Jr. on October 6, 2019:** On October 6, 2019, Pico Rivera Sheriff's Station responded to 8229 Rexall Avenue to the home of Marco Vasquez Jr. sheriff deputies responded to the Vasquez home because Mr. Vasquez was suffering from a mental health crisis. As sheriff deputies arrived to the Vasquez home, they encountered Mr. Vasquez inside his home. It was apparent that Mr. Vasquez was suffering from a mental health crisis. However, sheriff deputies failed to call for the mental health team and failed to address Mr. Vasquez's mental health concerns. Instead, sheriff deputies shot and killed Mr. Vasquez inside his own home. In the *Vasquez* matter, sheriff deputies violated the decedent's constitutional rights. The shooting and killing of Marco Vasquez Jr. shows a clear constitutional violation which is similar to our case because both shooting concerned the shooting of a person experiencing a mental health crisis who was not a threat.

B. **The shooting and killing of Omar Garcia on November 13, 2019**: On November 13, 2019, the mother, Lidia Espinoza, of Omar Garcia called 911 for assistance concerning Omar Garcia who was having a mental health crisis. Mr. Garcia had a history of mental health issues. Sheriff deputies responded to the Garcia home in East Los Angeles. When sheriff deputies responded, Mr. Garcia was shirtless in an empty lot, pacing back and forth and muttering to himself. It was clear that Mr. Garcia had mental health issues. Mr. Garcia then fled the scene and ultimately entered a near by high school. Sheriff deputies then contacted Mr. Garcias at the high school where they shot and killed him. In the *Garcia* matter, sheriff deputies violated the decedent's

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

constitutional rights. The shooting and killing of Omar Garcia shows a clear constitutional violation which is similar to our case because both shooting concerned the shooting of a person experiencing a mental health crisis who was not a threat.

C. **The shooting and killing of David Ordaz on March 14, 2021**: On March 14, 2021, David Ordaz Jr, a 34-year-old male, was fatally shot by deputies responding to a call from a family member asking for help for Mr. Ordaz who was acting suicidal with a knife. Upon arriving, deputies located David Ordaz Jr. seated in a car parked in front of his home. Deputies ordered Ordaz to exit the car. As he did so, Mr. Ordaz was holding a knife in his right hand while telling the deputies to shoot him. Deputies unsuccessfully interacted with David Ordaz Jr. for approximately five (5) minutes before they fatally shot him when. Mr. Ordaz was not a threat to the deputies when he was shot. In the *Ordaz* matter, sheriff deputies violated the decedent's constitutional rights. The shooting and killing of David Ordaz shows a clear constitutional violation which is similar to our case because both shooting concerned the shooting of a person experiencing a mental health crisis who was not a threat.

D. **The shooting of Isaias Cervantes on March 31, 2021:** On March 31, 2021, the Cervantes family called LASD sheriff deputies to assist in a mental health crisis as the Cervantes family home in Cudahy. The mental health crisis concerned 25 year old Isaias Cervantes who was diagnosed with several mental health conditions including autism and bipolar disorder. Mr. Cervantes was never armed with a weapon whatsoever. When deputies arrived to the home, they confirmed with the family that Mr. Cervantes had mental health conditions and the family needed help Mr. Cervantes. Thereafter, sheriff deputies entered the home where Mr. Cervantes was peacefully sitting in the couch of his living room. The deputies attempted to detain Mr. Cervantes which resulted in Mr. Cervantes being pinned to the

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

ground with one deputy holding the left side of Mr. Cervantes and another deputy using his knee to pin Mr. Cervantes on the ground. As Mr. Cervantes was face down pinned to the ground, one deputy pulled out his firearm and shot Mr. Cervantes point blank in the back. In the *Cervantes* matter, sheriff deputies violated the Mr. Cervantes' constitutional rights. The shooting of Isaias Cervantes shows a clear constitutional violation which is similar to our case because both shooting concerned the shooting of a person experiencing a mental health crisis who was not a threat.

E. **The shooting of Stephanie Lorraine Browne on February 15, 2022:** On February 15, 2022, Stephanie Lorraine Browne, a 40-year-old female, was fatally shot by deputies who responded to a call from Browne's family asking for help. The family had reached out for help because Browne was reportedly attempting to hurt herself. The dispatcher informed the responding officers that Browne was reportedly mentally ill and possibly schizophrenic and suicidal. When the officers arrived, Browne was sitting at a table with a knife on her. Deputies unsuccessfully interacted with Browne for approximately ten (10) minutes before fatally shooting her after she stood up and walked towards the officers while holding the knife to her neck. In the *Browne* matter, sheriff deputies violated the decedent's constitutional rights. The shooting and killing of Stephanie Lorraine Browne shows a clear constitutional violation which is similar to our case because both shooting concerned the shooting of a person experiencing a mental health crisis who was not a threat.

F. **The shooting and killing of Ricky Jimenez on June 5, 2022:** On June 5, 2022, Ricky Jimenez, a 51-year-old male, was fatally shot by deputies who responded to a call made by a business regarding a suicidal man, later identified as Ricky Jimenez. Ricky Jimenez also called 911 and made suicidal statements. Deputies unsuccessfully interacted with Ricky Jimenez for approximately thirteen (13) minutes before fatally shooting him after he

PLAINTIFF'S COMPLAINT FOR DAMAGES

1   failed to respond to their commands and reached into his backpack. In the
2   *Jimenez* matter, sheriff deputies violated the decedent's constitutional rights.
3   The shooting and killing of Ricky Jimenez shows a clear constitutional
4   violation which is similar to our case because both shooting concerned the
5   shooting of a person experiencing a mental health crisis who was not a threat.

6   67.    As shown in the prior shootings above, shooting individuals such as
7   MERCURIO who are in a mental health crisis occurs with such duration, frequency
8   and consistency that such custom and practice has become a traditional method of
9   carrying out policy within Defendants LASD and COUNTY.

10   68.    But for the sustained deliberate indifference of the Defendants LOS
11   ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS
12   ANGELES, and the final policymakers thereof, to the absence or utter inadequacy of
13   procedural safeguards so obviously necessary to the prevention of these readily
14   foreseeable harms, the shooting and brutalization of CHRISTOPHER MERCURIO
15   would, to a reasonable certainty, not have occurred. Therefore, the above-referenced
16   policies, customs, and practices adopted, maintained, or still tolerated by Defendants
17   LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS
18   ANGELES, and the final policymakers thereof, are so inextricably connected to the
19   unconstitutional acts and omissions of the individual Defendants as to have been the
20   moving force behind them.

21   69.    Accordingly, Defendants LOS ANGELES COUNTY SHERIFF's
22   DEPARTMENT and COUNTY OF LOS ANGELES, should not be held any less liable
23   for the harms alleged in all other Claims for Relief, that it caused CHRISTOPHER
24   MERCURIO through its employees, who at all times acted or failed to act pursuant to
25   the LOS ANGELES COUNTY SHERIFF's DEPARTMENT and COUNTY OF LOS
26   ANGELES' own policy of inaction, as previously set forth.

27   ///

28   ///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

A.  Wrongful death damages for the death CHRISTOPHER MERCURIO, pursuant to the Fourteenth Amendment claim.

B.  Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to pursuant to the Fourteenth Amendment claim.

C.  CHRISTOPHER MERCURIO's coroner's fees, funeral and burial expenses;

D.  Violation of CHRISTOPHER MERCURIO's constitutional rights;

E.  CHRISTOPHER MERCURIO's loss of life, pursuant to federal civil rights law;

F.  CHRISTOPHER MERCURIO's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.  General Damages, including wrongful death and survival damages according to proof plus all further and proper relief;

H.  Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.  Punitive damages as to individual defendants;

J.  Attorney's fees pursuant to 42 USC 1988; and

///
///
///
///
///
///
///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1    K.   All other damages, penalties, costs, interest, and attorneys' fees as allowed

2         by 42 U.S.C. §§ 1983 and 1988 and as otherwise may be allowed by

3         California and/or federal law.

4  Dated: December 25, 2024         **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                     **A PROFESSIONAL LAW CORPORATION**

5

6                                   By: _____

7                                      CHRISTIAN CONTRERAS, ESQ.
                                        Attorneys for Plaintiff,
8                                       TOMMY R. MERCURIO

9  Dated: December 25, 2024         **GASTÉLUM LAW, APC**

10

11                                  By: _____

12                                     Denisse O. Gastélum, Esq.
                                       Attorneys for Plaintiffs,
13                                     ESTATE OF CHRISTOPHER MERCURIO, et al.

14

15                        **DEMAND FOR JURY TRIAL**

16      Plaintiffs hereby demand a trial by jury on all claims for relief alleged herein.

17 Dated: December 25, 2024         **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                     **A PROFESSIONAL LAW CORPORATION**

18

19                                  By: _____

20                                     CHRISTIAN CONTRERAS, ESQ.
                                        Attorneys for Plaintiff,
21                                     TOMMY R. MERCURIO

22 Dated: December 25, 2024         **GASTÉLUM LAW, APC**

23

24                                  By: _____

25                                     Denisse O. Gastélum, Esq.
                                       Attorneys for Plaintiffs,
26                                     ESTATE OF CHRISTOPHER MERCURIO, et al.

27

28

**PLAINTIFF'S COMPLAINT FOR DAMAGES**